O'ROURKE, Respondent, *v.* BUTTE LODGE NO. 14,
INDEPENDENT ORDER OF GOOD TEMPLARS
et al., Appellants.

[Submitted May 13, 1897.　Decided May 24, 1897.]

*Mechanic's Lien—Sub-contractor—Suit in Equity.*

MECHANIC'S LIEN—*Sub-contractor.*—A sub-contractor is entitled to a judgment for a
lien against the building for materials furnished by him, although summons was
served by publication against the principal contractor, against whom no personal
judgment could be obtained.

SUIT IN EQUITY—*Verdict.*—In a suit in equity, the court can set aside the verdict or
findings of the jury, and adopt findings of its own.

*Appeal from the district court, Silver Bow county.　William
O. Speer, Judge.*

Statement of the case by the justice delivering the opinion.

ACTION by Thomas O'Rourke, executor of D. L. Harris,
deceased, against Butte Lodge, No. 14, Independent Order of
Good Templars, and others.　Judgment for plaintiff.　De-
fendants appeal.　Affirmed.

After the commencement of this suit, Harris died, and
O'Rourke, the plaintiff in this case, became his executor.

It appears from the record that in July, 1891, defendants
Joyner Brothers, a corporation or firm, entered into a con-
tract with the defendant Butte Lodge No. 14, I. O. G. T., to
erect a three-story brick building on a town lot in Butte city,
for said lodge.　Thereafter the Joyner Brothers sublet the
contract for furnishing the brick to be used in the construc-
tion of the building to one Ed. King, who was to furnish
them at the rate of eight dollars per thousand.　King was
one of the sureties on the bond of the Joyner Brothers for the
performance of the building contract entered into between the
Joyner Brothers and the lodge, to the effect that the Joyner
Brothers would complete the building according to the plans
and specifications, and deliver the same to the lodge free of

liens.  The bond provided that King should not be paid for the brick until all bills that might become liens upon the building were paid.

It further appears from the record that, about August 11th of the same year, King gave a chattel mortgage to D. L. Harris on the entire stock of brick in his brickyard, being the brickyard from which King was furnishing the brick to go into the construction of the building in question.  Thereupon Harris notified H. M. Patterson, who was the architect and agent of the defendant lodge for the construction of said building, and who, as such agent, was paying the bills as they became due, that all moneys owing for brick were to be paid to him (Harris).  Patterson made no objection to this, but immediately informed the Joyner Brothers.

It appears that the Joyner Brothers, then believing that they could obtain brick cheaper than King had been theretofore furnishing them, made no objection, as they concluded that they could get rid of the King contract, and buy brick cheaper than King had been furnishing them.  This occurred soon after King began to deliver the brick under his contract with the Joyner Brothers.  Harris discovered that the King brick were not being received for the construction of the building, and thereupon sought a conference with the Joyner Brothers and Patterson.  At this conference, he agreed to make King's contract and bond good, and see that the brick furnished under the King contract should be good.  Harris thereupon took possession of the King brickyard, paid off King's hands, and commenced the full management and control of the brickyard himself, which continued until all the brick were delivered which were necessary for the construction of the building.  He placed his own foreman in charge, and thereafter all the brick which went into the construction of the building were delivered by Harris, and received by Patterson, the agent and architect of the building, knowing that they were being delivered by Harris, instead of King. It seems further that after Harris took possession of the yard, and commenced to deliver the brick under the King contract,

Patterson, the agent for the defendant lodge, would pay no bills or orders on account thereof, without Harris' signature. The evidence shows that Patterson relied upon Harris, and not upon King, to deliver the brick under the King contract.

About the 16th of September, 1891, a suit was commenced in the district court of Silver Bow county by A. A. McMillan and others, against Ed. King, by attachment; and the Joyner Brothers and the defendant lodge were garnished, and whatever amounts or debts were due and owing from them to King were attached. The case was tried to a jury. The jury made certain findings of fact, and found a general verdict in favor of the defendant lodge. Thereafter the court overruled a motion of said defendant for judgment in accordance with the findings and verdict, and rendered judgment in favor of plaintiff, notwithstanding the verdict; the court having set aside the special findings of fact of the jury, and made special findings of its own. Thereafter the defendant lodge filed its motion for a new trial, which was overruled. An appeal is prosecuted from the judgment and order refusing a new trial.

*C. R. Leonard* and *F. T. McBride*, for Appellant.

*Forbis & Forbis* and *E. B. Howell*, for Respondents.

PEMBERTON, C. J.—We think the evidence in this case was ample to show that Harris was substituted, with the consent of all the parties in interest, for King in the contract by which King was to furnish the brick to construct the building in question by the Joyner Brothers. It is not necessary to treat the evidence upon this issue in detail.

It is not disputed that the defendant lodge still owes the sum of $823.60 for brick used in the construction of the building mentioned in the pleadings. A stipulation in the record concedes this. The chief contention seems to be as to who is entitled to this money—the plaintiff, whose testator furnished the brick, or A. A. McMillan et al., the attaching creditors of King.

The principal error assigned and contended for on this

appeal is that the defendants Joyner Brothers were not personally served with summons in the case. They were served by publication of summons. Appellant lodge contends that, as they were necessary parties to the suit, the plaintiff could have no judgment against it, the defendant lodge, foreclosing his lien until a valid judgment was first had against them for the amount found to be due from them for the brick.

We think this is a mistaken view of the law. There is but one cause of action stated in the complaint. This is the indebtedness due from the Joyner Brothers to Harris for the brick used in the construction of the building. But there are two remedies given by law: One a personal judgment against the Joyner Brothers for the amount of such indebtedness; the other a proceeding *in rem* under the statute, equitable in its character, against the building in the construction of which the brick were used. The plaintiff has the right under the law to pursue and invoke both these remedies in one suit. This is in accordance with the views of this court, as announced in *American Saving and Loan Association* v. *Burghardt*, recently decided, and reported in 48 Pac. 391. To hold that because plaintiff is unable to procure personal service upon the Joyner Brothers, who were the original contractors in this case, and for that reason is unable to recover a valid personal judgment against them, he is thereby deprived of his statutory remedy *in rem* against the building, we think so unjust and inequitable as to find no support in authority or reason. Certainly, our codes do not warrant such a construction, in our opinion. If such be the law, then all the owner of a building has to do is to get the contractor out of the state, so that he cannot be personally served with summons, to defeat the claims of all laborers and material men under the mechanic's lien laws of the state.

This proceeding to foreclose the lien against the building being equitable in its character, the court had authority to set aside the findings of the jury, and render judgment for the plaintiff, notwsthstanding the verdict, if the findings and verdict were not authorized by the evidence. In this case the

court was fully justified in its action. We think there is but little merit in this appeal. The judgment and order appealed from are affirmed.

*Affirmed.*

HUNT and BUCK, JJ., concur.